UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 2012-236 (WOB-JGW)

JAMES TRENT                                              PLAINTIFF
AND
ZURICH AMERICAN INS. CO.                     INTERVENOR PLAINTIFF

VS.                       **MEMORANDUM OPINION AND ORDER**

ROGER BIERLEN, ET AL.                                    DEFENDANTS

This matter came before the Court on Plaintiff's motion for summary judgment (Doc. 46) and Defendant Insurance Company of the State of Pennsylvania's cross motion for summary judgment (Doc. 52). The Court, finding oral argument unnecessary, hereby issues the following memorandum opinion and order.

For the reasons that follow, the Court grants in part and denies in part Plaintiff's motion for summary judgment and grants in part and denies in part Defendant Insurance Company of the State of Pennsylvania's cross motion for summary judgment.

*FACTUAL AND PROCEDURAL HISTORY*

This dispute involves six parties: Plaintiff James Trent ("Trent") and Intervening Plaintiff Zurich American Insurance Company ("Zurich"); Defendants Roger Bierlen ("Bierlen"), Insurance Company of the State of Pennsylvania ("Penn Insurance"), KCI Insurance Agency Inc. ("KCI"), and State Farm Automobile Insurance Company ("State Farm").

On or about November 5, 2010, Bierlen's tractor trailer rear-ended Trent's semi-tractor trailer. *See* Doc. 46-1, pp. 1-2. Trent seeks to recover against Bierlen, against KCI and State Farm based on insurance coverage, and against Penn Insurance based on its insurance policy

issued to Medallion Transport ("Medallion"). (Exh. A, pp. 3-4). The Court previously granted KCI's motion for summary judgment and Trent has settled his claims against Bierlen. *See* Doc. 41; Doc. 55. Accordingly, Trent's only claims remaining are those against State Farm and Penn Insurance.[1]

"Several months" before the accident, Trent leased the semi-truck from Great American Leasing ("GAL") in a lease-purchase agreement. *See* Doc. 26-2 at p. 1; Doc. 36, pp. 2. On June 14, 2010, Trent then leased his interest in the truck to Medallion. *See* Doc. 52-3.

Medallion is a certified motor carrier and Trent entered in this agreement so that he could operate the semi-truck as Medallion's independent contractor. *Id*. The lease agreement states that "DOT regulations require that for the protection of the public, [Medallion] have exclusive possession, control and use of leased motor vehicle equipment." *Id*. at ¶ 2. The lease agreement also states that "[p]rovisions in this agreement that relate to control of the use of the Equipment are for the sole purpose of compliance with applicable DOT regulations . . . ." *Id*. at ¶ 9.

Further, in the lease agreement, Medallion agreed to maintain "public liability and property damage insurance covering the operation of the [semi- truck] while it is engaged in performing Transportation Services." *Id*. at ¶10. Pursuant to that agreement, Medallion purchased a policy from Penn Insurance covering the semi-truck. *See* Doc. 51 at p. 2, Ex. C.

Additionally, at the time of the accident, Trent had an insurance policy with State Farm which covered Trent's 2004 Chevrolet pick-up truck. *See* Doc. 26-2 at Ex. B. The policy State Farm issued on Trent's Chevrolet pick-up excludes basic reparation benefits[2] ("BRB") coverage

---

[1] Intervening Plaintiff Zurich, the insurer of a Truckers Occupational Accident Insurance Policy for and on behalf of Medallion, also has claims against the Defendants for the monies it has paid Trent for medical bills and temporary total disability benefits. *See* Doc. 23-2.

[2] Basic reparations benefits are also known as "No-Fault benefits" and "Personal Injury Protection (PIP)."

for bodily injury to any insured "while occupying or through being struck by a motor vehicle owned by such insured if it is not insured for basic reparation benefits."[3]  *Id.* at Ex. C, p. 15.

Previously, State Farm moved for partial summary judgment against Trent, arguing that it did not owe Trent any basic reparations benefits because Trent's policy with State Farm covered the 2004 Chevrolet truck, not the semi-truck involved in the accident.[4]  *See* Doc. 26.  Trent countered, arguing that State Farm's motion was premature because discovery still had to be completed on the issues of ownership regarding the semi-truck and whether Trent was entitled to BRB coverage from the Penn Insurance policy.  *See* Doc. 36.  After oral argument, the Court denied State Farm's motion for summary judgment without prejudice and ordered the parties to continue discovery, with a deadline of February 15, 2014.  *See* Doc. 43.

Nonetheless, both Trent and Penn Insurance have moved for summary judgment on the issue of whether Medallion's policy through Penn Insurance covered Trent for basic reparation benefits.[5]  *See* Docs. 46, 52.

---

[3] Trent also asserted in his complaint that he had coverage through KCI.  However, KCI previously filed a motion for summary judgment refuting this allegation on the ground that it was merely a broker between Medallion and Penn Insurance.  *See* Doc. 37.  No party responded KCI's motion for summary judgment, and the Court granted that motion on May 16, 2013.  *See* Doc. 41.

[4] Trent also asserted claims against State Farm for uninsured motorists coverage (UM) and underinsured motorists coverage (UIM).  *See* Doc. 1-1.  Recently, the Court entered an agreed order of dismissal regarding Trent's claim for UIM coverage against State Farm.  *See* Doc. 61.

[5] Trent also asserts a claim against Penn Insurance for uninsured motorists coverage (UM) and underinsured motorists coverage (UIM).  *See* Doc. 1-1.  Penn Insurance asserts that Medallion specifically rejected UM and UIM coverage.  *See* Doc. 52-1 at p. 4; Doc. 52-5. Trent acknowledges that Medallion rejected UM and UIM coverage and he does not provide any reason why he would be entitled to such coverage under the Penn Insurance policy.  *See* Doc. 46-1 at p. 2.  Accordingly, Penn Insurance's motion for summary judgment is granted as it relates to Trent's claims for UM and UIM coverage.

*ANALYSIS*

**A. The Policy**

Defendant Penn Insurance does not dispute that its policy provided for public liability and property damage coverage for the semi-truck. However, Penn Insurance asserts that its policy only provides BRB coverage for vehicles owned by Medallion. *See* Doc. 52-1 at p. 3.

In fact, Penn Insurance points to the Declarations Page for the Medallion policy which provides that BRB coverage, or equivalent No-Fault coverage, is only provided to "those 'autos' you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged." *See* Doc. 52-4 at pp. 2, 7. Penn Insurance asserts that, "Because Medallion did not own Trent's Truck, the Policy did not provide any BRB coverage for the Truck." *See* Doc. 52-1 at p. 5.

Trent's argument that he is entitled to BRB coverage under the actual Penn Insurance policy language could, at best, be considered perfunctory. In fact, Trent's entire argument regarding BRB coverage under the actual policy language is: "By examining the policy itself, it is evident that PIP benefits were included." *See* Doc. 46-1 at pp. 3-4. Additionally, after Penn Insurance argued that the policy language only provides BRB coverage for those autos owned by Medallion, Trent abandons that argument in his reply brief. Rather, Trent focuses his argument on his assertion that the Kentucky Motor Vehicle Reparations Act ("MVRA") requires Penn Insurance to provide BRB coverage regardless of the policy language. *Id*.; *see also* Doc. 54.

Nonetheless, after examining the Trent-Medallion lease agreement and the Penn Insurance policy, the Court concludes that Trent is entitled to BRB coverage under the actual language of the policy.

Paragraph 2 of the Trent-Medallion lease agreement states, in part:

> [Department of Transportation] regulations require that for the protection of the public, [Medallion] have exclusive possession, control and use of leased motor vehicle equipment for the duration of the Agreement. [Trent] hereby grants to [Medallion] such possession, control and use of the equipment . . . as may be required to comply with the applicable DOT regulations.

*See* Doc. 51-2 at ¶ 2. Additionally, paragraph 12 of the lease agreement states:

> [Medallion] shall have full authority to trip lease Equipment to other authorized carriers during the term of this lease Agreement and only [Medallion] can authorize such trip leasing. Should [Trent] or Personnel enter into an unauthorized trip lease, [Trent] will be held to have immediately and unilaterally terminated this Agreement simultaneous with such entry and to have relieved [Medallion] of all of [Medallion's] obligations under this Agreement. All liability, claims, and damages involved in an unauthorized trip lease are the sole responsibility of [Trent].

*Id.* at ¶ 12.

"Certified interstate motor carriers, such as [Medallion], are required to comply with the provisions of Title 49 [of the United States Code] and the regulations promulgated thereunder." *Johnson v. S.O.S. Transp., Inc.*, 926 F.2d 516, 521 (6th Cir. 1991). Under 49 U.S.C. § 14102(a)(4), the Secretary of Transportation may require motor carriers which use leased vehicles to "have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier."

Additionally, 49 C.F.R. § 376.12(c)(1) states that a lease between an authorized carrier lessee and a lessor "shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease."

Further, 49 C.F.R. § 376.12(c)(2) states that "[p]rovision may be made in the lease for considering the authorized carrier lessee as the owner of the equipment for the purpose of subleasing it under these regulations to other authorized carriers during the lease."

"[T]he 'control and responsibility' regulations were initially prompted by concerns that certified carriers were evading federal safety requirements by using equipment leased from owner-operators who were exempt from the limitations placed upon certified carriers." *Johnson*, 926 F.2d at 524 n. 17.

As stated above, the lease agreement between Trent and Medallion provided that Medallion was to enjoy the "exclusive possession, control and use of the motor vehicle equipment for the duration of the Agreement." *See* Doc. 51-2 at ¶ 2. Additionally, the lease agreement provided Medallion the right to sublease the semi-truck to other carriers at any point during the term of the Trent-Medallion lease agreement. *Id*. at ¶ 12.

While Penn Insurance asserts that "[i]t cannot be seriously argued that Medallion owned the Truck," the Penn Insurance policy does not define the terms "own" or "owner." However, § 376.2(d) of the Federal Motor Carrier Safety Regulations defines "owner" as: "A person (1) to whom title to equipment has been issued, or (2) who, without title, has the right to exclusive use of equipment, or (3) who has lawful possession of equipment registered and licensed in any State in the name of that person." 49 C.F.R § 376.2(d).

Additionally, Kentucky law "makes a lessee of a vehicle the 'owner' for insurance purposes, if '[the] vehicle is the subject of an agreement for . . . lease, with the . . . lessee entitled to possession of the vehicle, upon performance of the contract terms, for a period of three hundred sixty-five (365) days or more . . . .'" *Standard Fire Ins. Co. v. Empire Fire & Marine Ins. Co.*, 234 S.W.3d 377, 380 (Ky. Ct. App. 2007) (quoting K.R.S. § 186.010(7)(b)).

"Exclusions and limitations on coverage must be clearly stated and the operative terms clearly defined. When language is capable of two reasonable interpretations, courts resolve doubts or uncertainties concerning its meaning in favor of the insured." *Ky. Emp'rs' Mut. Ins. v. Decker,* No.2010–SC–000459–WC, 2011 WL 1642183, at *6 (Ky. April 21, 2011) (citing *St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward, Inc.,* 870 S.W.2d 223, 227 (Ky. 1994)). Moreover, "[u]nder the 'doctrine of reasonable expectations,' an insured is entitled to all the coverage he may reasonably expect to be provided according to the terms of the policy." *Hendrix v. Fireman's Fund Ins. Co.,* 823 S.W.2d 937, 938 (Ky. Ct. App. 1991). "Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation." *Simon v. Continental Insurance Co.,* 724 S.W.2d 210 (Ky. 1986) (citation omitted).

Here, based on the language in the Trent-Medallion lease agreement, it would be reasonable that Medallion would be considered the "owner" of the semi-truck for purposes of the Penn Insurance policy. Clearly, the lease agreement calls for Medallion to enjoy "such possession, control and use of the equipment . . . as may be required to comply with the applicable DOT regulations," for a period of one year *See* Doc. 51-2 at ¶ 2.

Since the DOT regulations and K.R.S. § 186.010(7)(b) treat Medallion as if it were the owner of the semi-truck during the term of the lease agreement, and the Penn Insurance policy does not provide a definition of "owner" conflicting with the DOT regulations or the applicable Kentucky statute, Kentucky insurance law favors a finding of entitlement to coverage.

Accordingly, Medallion is considered the owner of Trent's semi-truck. Therefore, Trent is entitled to BRB coverage under the Penn Insurance policy because the policy provides BRB

coverage for "those 'autos' you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged." *See* Doc. 52-4 at pp. 2, 7.

### B. Requirement that an Insurer Provide Basic Reparations Benefits

Additionally, Trent asserts that even if the Penn Insurance policy does not expressly provide coverage for BRB, the Kentucky Motor Vehicle Reparations Act ("MVRA") requires the Penn Insurance policy to provide BRB coverage to Trent.[6] *See* Doc. 46-1 at pp. 4-5; Doc. 54 at pp. 3-5.

For this proposition, Trent relies on K.R.S. § 304.39-100, which states:

> (1) An insurance contract which purports to provide coverage for basic reparation benefits or is sold with representation that it provides security covering a motor vehicle has the legal effect of including all coverages required by this subtitle.
>
> (2) An insurer authorized to transact or transacting business in this Commonwealth shall file with the commissioner of insurance as a condition of its continued transaction of business within this Commonwealth a form approved by the commissioner of insurance declaring that **in any contract of liability insurance for injury, wherever issued, covering the ownership, maintenance or use of a motor vehicle other than motorcycles while the vehicle is in this Commonwealth shall be deemed to provide the basic reparation benefits coverage and minimum security for tort liabilities required by this subtitle**, except a contract which provides coverage only for liability in excess of required minimum tort liability coverage. Any nonadmitted insurer may file such form.

(emphasis added).

In response, Penn Insurance cites to K.R.S. § 304.39-080(5), which states:

> [E]very owner or operator of a motor vehicle registered in this Commonwealth or operated in this Commonwealth with an owner's permission shall continuously provide with respect to the motor vehicle while it is either present or registered in this Commonwealth, and any other person may provide with respect to any motor vehicle, by a contract of insurance or by qualifying as a self-insurer, security for the payment of basic reparation benefits in accordance

---

[6] It must be noted that Penn Insurance, as an insurer authorized to do business in Kentucky, does not dispute that it is subject to the MVRA requirements.

8

with this subtitle and security for payment of tort liabilities, arising from maintenance or use of the motor vehicle.

Additionally, Penn Insurance cites to K.R.S. § 304.39-020(12), which defines "owner" as:

> [A] person, other than a lienholder or secured party, who owns or has title to a motor vehicle or is entitled to the use and possession of a motor vehicle subject to a security interest held by another person. The term does not include a lessee under a lease not intended as security.

Relying on these provisions, Penn Insurance argues that since Medallion was a lessee of the semi-truck and not an owner or operator, then it was not required under K.R.S. § 304.39, et seq., to maintain BRB coverage for Trent's semi-truck. *See* Doc. 52-1 at pp. 5-8.

However, Penn Insurance misinterprets the statutes. While K.R.S. § 304.39-080(5) requires an owner or operator of a motor vehicle to maintain "basic reparations benefits" and "security for payment of tort liabilities," that statute allows that those insurance requirements can be provided by "any other person . . . with respect to any motor vehicle." Here, Trent maintained an insurance policy on the semi-truck through Medallion. Pursuant to K.R.S. § 304.39-100, that policy was required to cover Trent for both "basic reparations benefits" and "security for payment of tort liabilities."

Moreover, the Kentucky Supreme Court has stated:

> An exclusionary clause in an insurance contract which reduces below minimum or eliminates [BRB or tort liability coverage] effectively renders a driver uninsured to the extent of the reduction or elimination. Because the stated purpose of the MVRA is to assure that a driver be insured to a minimum level, such an exclusion provision contravenes the purpose and policy of the compulsory insurance act.

*Bishop v. Allstate Ins. Co.*, 623 S.W.2d 865, 866 (Ky. 1981) (citation omitted).

Further, the Kentucky Court of Appeals has interpreted K.R.S. § 304.39-100(1) to provide that "auto liability insurance contracts sold in Kentucky cannot cover less than the minimum coverage required by the MVRA." *Hugenberg v. W. Am. Ins. Co./Ohio Cas. Grp.*, 249

S.W.3d 174, 194 (Ky. Ct. App. 2006). In fact, in *Hugenberg*, the Kentucky Court of Appeals held that an entitlement exclusion was void as against public policy to the extent that it did not provide coverage for basic reparations benefits and tort liabilities because an insurer "would not be permitted to offer [the insured] less coverage than the minimum required by the MVRA." *Id*.

In support of its argument, Penn Insurance cites to *Omni Ins. Co. v. Coates*, 939 S.W.2d 879 (Ky. Ct. App. 1997) and *Brown v. Atlanta Cas. Co.*, 875 S.W.2d 103 (Ky. Ct. App. 1994). In both of those cases, the plaintiffs were in accidents in their own vehicles that had no insurance coverage. In *Coates*, the plaintiff sought coverage under a policy issued for a different vehicle that she owned. 939 S.W.2d at 879. In *Brown*, the plaintiff sought coverage under his father's motor vehicle policy. 875 S.W.2d at 103. Both of those Courts denied BRB coverage, finding that providing coverage under those circumstances would allow uninsured motorists to circumvent the requirement of maintaining the minimum insurance requirements under the MVRA. *See Coates*, 939 S.W.2d at 880; *Brown*, 875 S.W.2d at 104.

The situations presented in *Coates* and *Brown* are distinct from the situation presented in the case at bar. Here, Trent obtained coverage for the semi-truck through the Penn Insurance policy issued to Medallion. The public policy reason for declining to find coverage in *Coates* and *Brown* is not present here because Trent did, in fact, procure insurance coverage through his relationship with Medallion. Any lack of coverage for BRB is cured through application of K.R.S. § 304.39-100(2), which provides that "in any contract of liability insurance for injury, wherever issued, covering the ownership, maintenance or use of a motor vehicle other than motorcycles while the vehicle is in this Commonwealth shall be deemed to provide the basic reparation benefits coverage and minimum security for tort liabilities . . . ."

The MVRA did not require Medallion or Penn Insurance to provide Trent with insurance coverage. However, when Trent was offered general liability coverage for the semi-truck, K.R.S. § 304.39-100(1) mandated that the Penn Insurance policy also provide coverage for basic reparations benefits. "The terms of an insurance contract must control unless [they] contraven[e] public policy or a statute." *York v. Kentucky Farm Bureau Mut. Ins. Co.*, 156 S.W.3d 291, 294 (Ky. 2005) (quoting *Meyers v. Kentucky Medical Insurance Co.,* 982 S.W.2d 203, 209 (Ky. Ct. App. 1997)). Here, the clause in the Penn Insurance policy excluding Trent from BRB coverage contravenes K.R.S. § 304.39-100.

Therefore, even if the Penn Insurance policy did not expressly provide BRB coverage, the MVRA requires the Penn Insurance policy to provide BRB coverage to Trent. Any language in Penn Insurance's policy excluding BRB coverage for Trent's semi-truck is void as against the public policy provided by the MVRA.

Thus, Trent's motion for summary judgment is granted as to his entitlement to BRB coverage under the Penn Insurance policy.

### C. Reasonable Foundation for Denial

Trent also asserts that he should be entitled to reasonable attorney's fees and 18% interest on his BRB coverage from the date this lawsuit was originally filed in Boone Circuit Court until this Court's judgment is satisfied because Penn Insurance's denial of BRB coverage was "without reasonable foundation." *See* Doc. 46-1 at pp. 5-6 (citing K.R.S. § 304.39-210(2); K.R.S. § 304.39-220(1)).

"[T]he assertion of a legitimate and bona fide defense by the reparation obligor constitutes reasonable foundation for delay under KRS 304.39-210 and KRS 304.39-220." *Auto. Club Ins. Co. v. Lainhart*, 609 S.W.2d 692, 695 (Ky. Ct. App. 1980).

Here, Penn Insurance argues that its assertion that it was not required to provide BRB coverage under the MVRA because its insured, Medallion, was not the "owner or operator" of the semi-truck was a legitimate and bona fide defense. While this factual scenario assuredly provides an interesting situation as it applies to the MVRA, it does not change the clear mandate in K.R.S. § 304.39-100 that the Penn Insurance policy covering Trent for general liability also provide coverage for basic reparations benefits. With such a mandate provided via the MVRA, Penn Insurance's denial of Trent's BRB coverage claim was without reasonable foundation. *Cf. Kentucky Farm Bureau Mut. Ins. Co. v. McQueen*, 700 S.W.2d 73, 74 (Ky. Ct. App. 1985) (finding that insurer's refusal to pay insured's claim was without reasonable foundation because Kentucky Supreme Court case law clearly rejected insurer's basis for denying insured's claim).

Accordingly, Trent is entitled to reasonable attorney's fees and 18% interest on his BRB coverage from the date this lawsuit was originally filed until this Court's judgment is satisfied.

**D. State Farm**

Lastly, Trent still has a claim pending against State Farm for BRB coverage. However, Trent's claim against State Farm must be dismissed because "the statutory language [of the MVRA] is unambiguous that the vehicle occupied by the injured person is responsible for the payment of BRB." *Stewart v. ELCO Admin. Servs., Inc.*, 313 S.W.3d 117, 120 (Ky. Ct. App. 2010). Here, pursuant to the above analysis, Penn Insurance, the insurer of the policy providing coverage to the semi-truck that Trent was occupying, is liable for payment of the BRB coverage.

Additionally, Kentucky law prohibits stacking of BRB coverage. *See Stevenson ex rel. Stevenson v. Anthem Cas. Ins. Grp.*, 15 S.W.3d 720, 723 (Ky. 1999). ("Since KRS 304.39–020(2) provides that '[t]he maximum amount of basic reparation benefits payable for all economic loss resulting from injury to any one (1) person as the result of one (1) accident shall

be ten thousand dollars ($10,000),' [Kentucky courts have] correctly concluded that this coverage cannot be stacked.").

Moreover, Trent admits that "[i]f BRB coverage is found to exist under the policy with Pennsylvania Insurance, . . . then Plaintiff agrees that State Farm is not responsible for those benefits." *See* Doc. 36.

Accordingly, Trent's claim for BRB coverage against State Farm is dismissed.

**THEREFORE, THE COURT BEING ADVISED, IT IS ORDERED THAT:**

1. Plaintiff's motion for summary judgment against Defendant Insurance Company of the State of Pennsylvania (Doc. 46) be, and is hereby, **GRANTED** as to Plaintiff's claim for basic reparations benefits coverage and **DENIED** as to Plaintiff's claims for uninsured and underinsured motorists coverage;

2. Defendant Insurance Company of the State of Pennsylvania's cross motion for summary judgment (Doc. 52) be, and is hereby, **GRANTED** as to Plaintiff's claim for uninsured and underinsured motorists coverage and **DENIED** as to Plaintiff's claim for basic reparations benefits coverage;

3. Plaintiff's claim for basic reparations benefits against Defendant State Farm Automobile Insurance Company be, and is hereby, **DISMISSED**;

4. Plaintiff is entitled to reasonable attorney's fees and 18% interest on his basic reparations benefits claim against Defendant Insurance Company of the State of Pennsylvania from the date this lawsuit was originally filed in Boone Circuit Court until this Court's judgment is satisfied; and

5. Plaintiff shall submit a proposed judgment to this Court **within ten (10) days of the entry of this order**.

This 9th day of January, 2014.

